CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/31/2022
JULIA C. DUDLEY, CLERK
BY: s/ C. Amos
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

DAWN M.,[1]

                      *Plaintiff*,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

                      *Defendant*.

CASE NO. 6:20-cv-00036

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on consideration of the parties' cross-motions for summary judgment, Dkts. 12, 17, the Report and Recommendation of United States Magistrate Judge Robert S. Ballou, Dkt. 22 ("R&R"), and Plaintiff Dawn M.'s objections thereto, Dkt. 23. Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to the Magistrate Judge for proposed findings of fact and a recommended disposition. In the R&R, the Magistrate Judge recommended this Court deny Plaintiff's motion for summary judgment and grant the Commissioner's motion for summary judgment.

The Court conducts a de novo review of those portions of the R&R to which Plaintiff objects. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). A plaintiff must make specific objections to the R&R; a plaintiff's objection must be more than mere disagreement with the Magistrate Judge's conclusions. *See Veney v. Astrue*, 539 F. Supp. 2d 841, 846 (W.D. Va. 2008).

---

[1] The Court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts only use the first name and list initial of the claimant in social security opinions.

For the following reasons, the Court considers the Claimant's objections are in part well founded, to the extent that the Administrative Law Judge's decision did not demonstrate that she had considered all the relevant factors required by regulation in assessing the opinions of the Claimant's treating physicians, including that of his physiatrist Dr. Gallagher. Accordingly, the Court declines to adopt the R&R. The case shall be remanded to the Commission for further consideration.

## Standard of Review

When examining a Social Security Administration ("SSA") disability determination, the reviewing court must uphold factual findings of the Administrative Law Judge ("ALJ") if they are supported by substantial evidence and were reached under application of the correct legal standard. *See* 42 U.S.C. § 405(g), 1383(c)(3); *Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012).

Substantial evidence is more than a mere scintilla—but less than a preponderance—of the evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650. 653 (4th Cir. 2005) (per curiam). Where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the ALJ's decision. *Id.* Moreover, the reviewing court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589. "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## Applicable Law

The Social Security Act provides supplementary security income (or "SSI") benefits "to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) (citation omitted). The Act defines a person as "disabled" if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

To determine whether a claimant is disabled and thus entitled to SSI, ALJs must use the five-step sequential evaluation process set forth in Social Security Administration regulations. *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019); 20 C.F.R. § 416.920(a)(1). In summary,

> The ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

The claimant has the burden of proof on each of steps 1 through 4, and the Commissioner has the burden at step 5. *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). If the claimant does not meet her burden at any step, she is determined not to be disabled. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017).

## Background

In March 2016, the Claimant filed an application for SSI, claiming that she was disabled due to her cervical dystonia and scoliosis. Administrative Record ("R."), Dkt. 7-1 at 343, 363.

The Claimant's application was denied on the initial determination and upon reconsideration. *Id.* at 218–35 (initial), 236–52 (reconsideration).

The ALJ in this case proceeded through each of the five-steps set forth above.

At step 1, the ALJ found that the Claimant was not engaged in substantial gainful activity since the date of her application for disability benefits. Administrative Record, Dkt. 7-1 at 102 ("R."). At step 2, the ALJ determined that the Claimant has the following severe impairments: cervical dystonia, scoliosis, obesity, bipolar disorder, and anxiety. R. 102–03. At step 3, the ALJ concluded that the Claimant did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. R. 103–05. The ALJ specifically considered listing 1.00 (musculoskeletal disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). *See id.* The ALJ determined that the Claimant had moderate limitations in "understanding, remembering or applying information," "interacting with others," and "concentrating, persisting, or maintaining pace," but "no limitations" on "adapting or managing oneself." R. 104. Before turning to step 4, the ALJ found that the Claimant had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except after one hour of sitting, she would need to stand up for three to five minutes. She can frequently reach in all directions. She can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She can perform all other postural activities occasionally. She should be around workplace hazards and vibrations no more than occasionally. She is limited to simple, routine, and repetitive tasks, but not at a production-rate pace and can make simple work-related decisions. In addition to normal breaks, she would need an additional five to eight percent of time off task in an eight-hour workday. She would be absent from work one day per month. She can have frequent interaction with supervisors and no more than occasional interaction with coworkers and the public.

R. 105. At step 4, the ALJ determined that the Claimant was unable to perform any past relevant work, R. 110–11, but found at step 5 that the Claimant could perform jobs that exist in

significant numbers in the national economy, such as an addresser (15,000 jobs nationally), call out operator (14,000 jobs nationally), and document preparer, clerking position (15,000 jobs nationally), R. 111–12. Accordingly, the ALJ concluded that the Claimant was not disabled and denied her application for SSI benefits. R. 112. The Appeals Council denied the Claimant's request for review of the ALJ's decision. R. 1–4.

## Analysis

The Claimant's primary argument is that the ALJ "failed to properly weigh the medical opinion evidence" in her case, specifically as regards the opinion from her treating psychiatrist, Dr. Gallagher. Dkt. 23 at 2–5, 11–12. In addition to arguing why the ALJ improperly discounted Dr. Gallagher's opinion on its merits, *id.* at 2–5, the Claimant further argued that the ALJ failed as a matter of process to consider the relevant factors in assessing her treating physicians' opinions. Specifically, the Claimant asserted that the ALJ failed to consider the governing factors in 20 C.F.R. § 416.927(c)(2)–(6) in weighing the opinions of her treating physicians, necessitating remand under Fourth Circuit precedent. Dkt. 23 at 11–12 (citing *Arakas*, 983 F.3d at 106–07 and *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384–85 (4th Cir. 2021)).

Under the "treating physician" rule, ALJs generally are to "give more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) …." 20 C.F.R. § 416.927(c)(2).[2] Under the regulations, an ALJ is "required to

---

[2] As the Claimant filed her claim in 2016 for supplemental security income alleging a disability, the rules in 20 C.F.R. § 416.927 apply. R. 100. For claims filed on or after March 27, 2017, the rules in § 416.920c apply. In promulgating the new regulation, the agency was clear that it was "not retaining the treating source rule in [the] final 404.1520c and 416.920c for claims filed on or after March 27, 2017." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017). However, this opinion applies the earlier regulations (§ 416.927), and therefore the treating physician rule applies in this case.

5

give 'controlling weight' to opinions proffered by a claimant's treating physicians so long as the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record.'" *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting, e.g., 20 C.F.R. § 416.927(c)(2)). The Fourth Circuit "emphasized that the treating physician rule is a robust one," and that a treating physician's opinion "'must be given great weight and may be disregarded only if there is persuasive contradictory evidence.'" *Arakas*, 983 F.3d at 107 (quoting *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)) (cleaned up).

In those instances when an ALJ does not give a treating physician's opinion controlling weight, the ALJ "*will apply*" a number of factors set out in the regulation "in determining the weight to give the medical opinion." 20 C.F.R. § 416.927(c)(2) (emphasis added).

These factors include: (1) the "[l]ength of the treatment relationship and the frequency of examination," (2) the "[n]ature and extent of the treatment relationship," (3) the "[s]upportability" of the medical opinion, i.e., with "relevant evidence" and "[t]he better an explanation" for the opinion, the "more weight [the ALJ] will give that medical opinion," (4) the "[c]onsistency" of the opinion "with the record as a whole," (5) the physician's "[s]pecialization," and (6) "[o]ther factors" that "tend to support or contradict the medical opinion." *Id.* § 416.927(c)(2)–(6). The regulations also provide that the ALJ "will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." *Id.* § 416.927(c)(2).

The Fourth Circuit has recently had occasion to address the treating physician rule in several Social Security appeals. In *Arakas*, the court emphasized that a treating physician's opinion "*must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the

6

record." 983 F.3d at 107 (emphases in original). Further, after concluding that the ALJ in that case had failed to properly give the treating physician's opinion controlling weight, the court also held that the "ALJ failed to apply the factors listed in 20 C.F.R. § 404.1527(c) to decide how much weight it *should* be afforded." *Id.*[3] Moreover, the fact that the ALJ in that case had "consider[ed] the consistency of [the treating physician's] medical opinion with the record as a whole" was insufficient. *Id.* at 107 n.16. That was one factor, but the court held that regulation required "ALJs to consider *all* of the enumerated factors in deciding what weight to give to a medical opinion," and the ALJ in that case had "failed to address the other factors," including "the nature and length of the treatment relationship and [the treating physician's] specialization as a rheumatologist." *Id.* at 107–08 n.16.

In *Dowling*, the Fourth Circuit reiterated that ALJs must apply those factors set forth in the regulation if a treating physician's opinion is not entitled to controlling weight. 986 F.3d at 385–86. In that case, notably, the Fourth Circuit affirmed the ALJ's conclusion that the treating physician's medical opinion was not entitled to controlling weight because "a reasonable mind could conclude that the opinion conflicts with other evidence in the record." *Id.* at 385. Yet the court cautioned that "it does not follow that the ALJ had fee reign to attach whatever weight to that opinion that he deemed fit," but rather, "[t]he ALJ was required to consider each of the six 20 C.F.R. § 404.1527(c) factors before casting [that] opinion aside." *Id.* Indeed, the ALJ in *Dowling* had explained that he afforded only negligible weight to the treating physician's opinion "because he found the opinion to be inconsistent with other evidence in the record, and

---

[3] "20 C.F.R. § 404.1527 applies to claims for a period of disability and disability insurance benefits, and the regulation in the present case, 20 C.F.R. § 416.927, applies to claims for supplemental security income. The language in both sections is identical." *Ward v. Chater*, 924 F. Supp. 53, 56 n.3 (W.D. Va. 1996).

7

the basis for the opinion was 'not adequately explained' …" *Id.* While the Fourth Circuit found that the ALJ's explanation had "touche[d] on" two of the factors required by the regulation—namely "consistently and supportability"—the court found "no indication that the ALJ actually undertook the required analysis" of the treating physician's opinion. *Id.* For instance, "the ALJ never so much as acknowledged the existence" of the regulation's factors, and "was completely silent" about the remaining factors. *Id.* To be sure, the court cautioned, "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician." *Id.* But in any event, the court held that "it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Id.* (emphasis in original).

Accordingly, in this case, the governing regulations required the ALJ's decision to reflect that the ALJ had considered these factors with respect to Dr. Gallagher's opinion when the ALJ determined not to give his opinion controlling weight. As the ALJ's decision failed to reflect that such consideration was given, remand is appropriate.

The ALJ in this case determined to give "little weight" to the opinion of the Claimant's treating psychiatrist, Dr. Gallagher. In so doing, the ALJ wrote:

> As for the opinion evidence regarding mental impairment, in October 2017, the claimant's treating psychiatrist, James Gallagher, MD, opined that the claimant has marked limitations in her ability to understand and remember detailed instructions and throughout abilities of concentration and persistence and adaptation (14F). Dr. Gallagher opined that the claimant has moderate-to-marked and marked limitations in her ability to interact with others. He opined she would be absent two to three times a month.
>
> The undersigned gives little weight to Dr. Gallagher's opinion because the identified signs and symptoms by Dr. Gallagher do not support the marked limitations and absences. For example, Dr. Gallagher only indicated she has depressed mood, poor immediate memory, and a history of hallucinations with no thought disorder or concentration deficits, no hostility, no behavioral or social deficits, and no inpatient hospitalizations. Moreover, the opinion is not supported by the treatment note Dr. Gallagher provided as support, as it indicates she feels

>better with improved sleep, energy, and motivation, pretty good memory and concentration, and no hallucinations or delusions (14F/6).

R. 110 (paragraph break added for readability).

As in *Dowling*, the Court does not disagree that there is such evidence in this record that "a reasonable mind could conclude that [Dr. Gallagher's] opinion conflicts with other evidence in the record," supporting the ALJ's conclusion that his opinion is not entitled to "controlling weight." *See Dowling*, 986 F.3d at 385. Also as in *Dowling*, the ALJ's decision largely touched on two of the required six factors (supportability and consistency), and a part of the third factor, concerning the length of the treatment relationship. *See* R. 107; 20 C.F.R. § 416.927(c)(2)(i) (length of treatment relationship and frequency of examination). Even as to those factors, the decision failed to explain significant aspects of its supportability and consistency analysis, such as why Dr. Gallagher's opinion that the Claimant's depressed mood, poor immediate memory and auditory hallucinations resulted in marked limitations would be undermined by the fact that he did not also find that *other* symptoms or diagnoses (such as hostility, thought disorder, etc.) were present. Nor did the decision explain why only "little weight" should be afforded to the opinion on the basis that one treatment note Dr. Gallagher attached to his questionnaire reflected certain improvements in the Claimant's conditions (i.e., no hallucinations or delusions noted, and negative for depression). R. 110, 672. That same note reflected that the Claimant had a long history of "visual and auditory hallucinations," and "depression, major, recurrent, severe with psychosis," R. 672, and Dr. Gallagher's prior treatment notes reflected the Claimant's struggles with hallucinations and depression, among other conditions.[4] (Later still, in her testimony to the

---

[4] Dr. Gallagher's treatment notes showed that the Claimant suffered from auditory and occasionally visual hallucinations. *See, e.g.*, R. 766–67 (8/18/16, describing "some … mild" auditory hallucinations of a voice "command[ing]" the Claimant, and presenting "thoughts of

ALJ in 2019, the Claimant testified that she continued "hear[ing] voices" and "see[ing] visions," "pretty much every day," and her medication was no longer working, R. 195, 205).

In any event, the decision simply did not reflect consideration of the other factors in determining what weight to give Dr. Gallagher's opinion.[5] Nor can the Court say that such omissions were insignificant or immaterial. For example, while the ALJ noted that the Claimant began "psychiatric medication management in July 2016," R. 107, the frequency of Dr. Gallagher's treatment relationship with the Claimant is a factor that could weigh in the Claimant's favor. 20 C.F.R. § 416.927(c)(2)(i). Dr. Gallagher appears to have seen the Claimant no less than twelve times in the fourteen months preceding his opinion that the Claimant was disabled.[6] *See* R. 667. Generally, the longer a treating physician has seen a patient and the more time they have been seen, the more weight the ALJ will afford their medical opinion. *See* 20 C.F.R. § 416.927(c)(2)(i). Moreover, the nature and extent of the treating relationship could also cut in the Claimant's favor, *id.* § 416.927(c)(2)(ii), as the Claimant's primary care physician had referred her to Dr. Gallagher for her depression and hallucinations, R. 784, 797.

---

unreality"); R. 760–61 (9/1/16, describing Claimant "hear[ing] man's voice issuing commands all day," and presenting "auditory hallucination").

To be sure, Dr. Gallagher's notes showed that the Claimant's hallucinations got better over time with medication. *See, e.g.*, R. 754–55 (9/21/16, writing auditory hallucinations are "much less", but "[s]till hears dead [mother]"; "A lot better vs. 1st visit."); R. 748–49 (10/7/16, no auditory or visual hallucinations); R. 745–46 (12/20/16, similar); R. 742–43 (1/3/17, similar). Then they got worse again. *See* R. 739–40 (1/20/17, noting Claimant has auditory hallucinations every day, including "today," and "visual hallucination about a week ago"). Then better again. *See* R. 719–20 (7/25/17, no auditory or visual hallucinations).

[5] These other factors are the "[l]ength of the treatment relationship and *the frequency of examination*," the "[n]ature and extent of the treatment relationship," the "specialization" of the treating physician, and any "other factors" that would tend to support or contradict the physician's opinion. *See* 20 C.F.R. § 416.927(2)–(6) (emphasis added).

[6] *See, e.g.*, R. 784–86 (7/7/2016); R. 771–74 (7/21/16); R. 766–67 (8/18/16); R. 760–62 (9/1/16); R. 754–56 (9/21/16); R. 748–50 (10/7/16); R. 745–47 (12/20/16); R. 742–44 (1/3/17); R. 739–41 (1/20/17); R. 730–32 (3/17/17); R. 719–21 (7/25/17); R. 713–15 (11/8/17).

The ALJ decision's consideration of the medical opinion of Claimant's primary care physician, Dr. Ahgnes Bolusa-Sabugo, focused primarily on the consistency and supportability factors, but also failed to reflect meaningful consideration of all of the relevant factors. *See* R. 108–09. So too did the ALJ's consideration of the opinion of the Claimant's treating neurologist, Dr. Johanne Personna-Policard, focus on the consistency and supportability factors without reflecting meaningful consideration of the other factors. *See* R. 109. The ALJ's decision afforded both treating physicians' opinions only "partial weight." R. 108–09. And while the ALJ's decision "did consider the consistency of [their] medical opinion[s] with the record as a whole," that is just "one of the factors listed in the regulation," which "requires ALJs to consider *all* of the enumerated factors in deciding what weight to give a medical opinion." *See Arakas*, 983 F.3d at 107 (emphasis in original).

To be sure, "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician." *Dowling*, 986 F.3d at 385. However, "it must nonetheless be apparent from the ALJ's decision" that they "meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Id.* Nor does the general reference earlier in in the ALJ's decision that "[t]he undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927," reflect that that the ALJ considered the relevant factors. At bottom, the ALJ's decision simply does not reflect that each of the factors in 20 C.F.R. § 416.927(c)(2)–(6) were considered when the ALJ determined the weight afforded the Claimant's treating physicians' opinions, namely those of Dr. Gallagher, as well as Dr. Sabugo and Dr. Personna-Policard.[7]

---

[7] The Court notes that the ALJ in this case did not have the benefit of the Fourth Circuit's decisions in *Arakas* and *Dowling* at the time she issued her opinion.

In this circumstance, governing precedent as well as prudence counsel in favor of a remand such that the ALJ be afforded the opportunity to assess the treating physicians' opinions in light of all applicable factors in the first instance. *See, e.g.*, *Dowling*, 986 F.3d at 384–86; *Arakas*, 983 F.3d at 106–08; *Triplett v. Saul*, 860 F. App'x 855, 865 (4th Cir. 2021) (per curiam) (unpublished) (reversing and remanding on account of the ALJ's failure to engage meaningfully with the relevant factors in dismissing a treating physician's opinion); *Lynch v. Berryhill*, No. 5:19-cv-70, 2022 WL 677572, at *3 (W.D.N.C. Mar. 7, 2022) (reversing and remanding ALJ decision where "the ALJ did not discuss or acknowledge the factors … as instructed by *Dowling*); *Christian v. Saul*, No. 1:20-cv-51, 2021 WL 1170012, at *4 (S. D. W. Va. Mar. 26, 2021) ("As in *Dowling*, the ALJ's explanations touch on only two of the … factors: supportability and consistency," but "[t]he ALJ does not discuss other factors that, arguably, might have cut in Christian's favor, such as the length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship with the three providers"); *Nelson v. Saul*, No. 9:19-cv-3275, 2021 WL 494987, at *10 (D.S.C. Jan. 26, 2021), *adopted in* 2021 WL 492491 (D.S.C. Feb. 10, 2021) (reversing and remanding to ALJ for "failure to evaluate opinions of the Plaintiff's treating specialist physician … and non-examining and non-treating agency physicians under the standards of the Treating Physician Rule, 20 C.F.R. § 416.927").

Because the Court remands this case for these reasons, it does not address the Claimant's remaining objections; however, the ALJ should address the other issues raised by the Claimant on remand. *See Tanner v. Comm'r of SSA*, 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) (unpublished) (noting that the agency's appeals manual "notes that the Appeals Council will vacate the entire prior decision of an administrative law judge on remand, and that the ALJ must consider de novo all pertinent issues").

**Conclusion**

For these reasons, in an accompanying Order, the Court will decline to adopt the R&R (Dkt. 22), sustain in part the Claimant's objections to the R&R (Dkt. 23), grant in part the Claimant's motion for summary judgment (Dkt. 12) and deny the Commissioner's motion for summary judgment (Dkt. 17). Further the Court will reverse the final decision of the Commissioner and remand the case pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings as set forth herein.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

ENTERED this __31st__ day of March, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE